## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHNEISHA DUNCAN, Administratrix** | : | |
| **Estate of Daniel Simms** | : | **Civil Action No. 12-CV-02117** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| **CITY OF CHESTER** | : | |
| **and** | : | |
| **WILLIAM CAREY** | : | |
| **and** | : | |
| **JOHN DOE** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2013, upon consideration of the

Motion for Summary Judgment of Defendants City of Chester and William Carey and response

thereto, it is hereby **ORDERED** and **DECREED** that Defendants Motion is **GRANTED** and

Plaintiff's Complaint is hereby **DISMISSED** with prejudice against the City of Chester and

William Carey and the case against the John Doe defendant is also dismissed with prejudice. .

**BY THE COURT:**

_____
**Petrese B. Tucker,      J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHNEISHA DUNCAN, Administratrix | : | |
| **Estate of Daniel Simms** | : | **Civil Action No. 12-CV-02117** |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| CITY OF CHESTER | : | |
| and | : | |
| WILLIAM CAREY | : | |
| and | : | |
| JOHN DOE | : | |
| Defendants | : | |

## DEFENDANTS' CITY OF CHESTER AND OFFICER WILLIAM CAREY'S MOTION FOR SUMMARY JUDGMENT

Defendants, City of Chester and Police Officer William Carey, by and through their undersigned counsel, Holsten & Associates, by Suzanne McDonough, hereby move this Honorable Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pursuant to Local Rule 7.1, the defendants incorporate the attached supporting memorandum of law and exhibits including the Statement of Undisputed Facts.

Wherefore, the defendants respectfully request that This Honorable Court grant their Motion for Summary Judgment, dismissing the plaintiff's Second Amended Complaint with prejudice.

Respectfully submitted,
**Holsten & Associates**
SMM2371

Dated: _____     BY: _____

**Suzanne McDonough, Esquire**
Attorney I.D. No.: 29394
Holsten & Associates
One Olive Street
Media, PA 19063
(610) 627-8307
Attorney for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HAHNEISHA DUNCAN, Administratrix | : |
| **Estate of Daniel Simms** | : |
| **Plaintiff** | : |
| | : Civil Action No. 12-cv-02117 |
| | : |
| vs. | : |
| | : |
| **CITY OF CHESTER** | : |
| | : |
| **WILLIAM CAREY** | : |
| **AND** | : |
| **JOHN DOE** | : |
| **Defendants** | : |

---

**DEFENDANTS' CITY OF CHESTER AND OFFICER WILLIAM CAREY'S
MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Defendants, the City of Philadelphia and Police Officer William Carey, hereby respectfully move for summary judgment on all claims asserted against them by the Plaintiff, Rahneisha Duncan, Administratrix, Estate of Daniel Simms. This Plaintiff's lawsuit arises from a fatal police shooting on August 5, 2011 at or near 23rd and Crosby Streets in Chester, Pennsylvania. The Plaintiff's decedent, Daniel Simms was fatally shot by Officer William Carey when Mr. Simms pointed a gun at PO Carey.

In the Second Amended Complaint, the operative pleading, (Doc. #15), the Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States against the City of Chester ("the City"), based on municipal liability premised upon the City's alleged failure to supervise, train and discipline its police

officers (see generally, Counts I and II of the Complaint). The Plaintiff also seeks relief against PO Carey, individually, pursuant to § 1983 and the Fourth and Fourteenth Amendments to the Constitution, alleging PO Carey's use of deadly force Mr. Simms violated his right to be free from excessive force. (Count III of Complaint.) The Plaintiff seeks further relief against PO Carey based on supplemental state law claims of wrongful death and survival, assault and battery and conspiracy. (Counts IV and, V, VI and VIII of the Second Amended Complaint respectively) and against the City of Chester based upon alleged negligence in training, supervision and discipline. (Count VII of the Second Amended Complaint).

The City and PO Carey filed an Answer with Affirmative Defenses to the Second Amended Complaint (Doc. #16), asserting several affirmative defenses, including a failure to state a claim upon which relief can be granted, qualified immunity, police privilege, and immunity pursuant to Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act").

## II.    STATEMENT OF UNDISPUTED FACTS

See   Statement of Undisputed Facts submitted simultaneously with the Motion and incorporated herein by reference.

## III.    SUMMARY JUDGMENT STANDARD

The Court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Id. All inferences must be drawn, and all

doubts resolved in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he believes demonstrate the absence of material fact disputes. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party, and may not rest on mere denials. See id. at 321 n.3; First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the Plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." Celotex, 477 U.S. at 322-24. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. See Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989). Although all justifiable inferences are required to be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences there from could result in a judgment for the non-moving party." Schwartz v. Hospital of Univ. of Pa., 1993 U.S. Dist. LEXIS 6108 at *6 (E.D. Pa. May 7, 1993). Furthermore, "[p]laintiff cannot "simply reassert factually unsupported allegations in its pleadings." Poles v. St. Joseph's Univ., 1995 U.S. Dist. LEXIS 13145 at *14 (E.D. Pa. September 11, 1995) citing Celotex, 477 U.S. at 325. "Plaintiff must present affirmative evidence in order to defeat this properly supported motion for judgment." Id.

3

## IV.   LEGAL ARGUMENT

### A. THE AMENDED COMPLAINT MUST BE DISMISSED AS PLAINTIFF RAHNEISHA DUNCAN LACKS STANDING TO BRING A CAUSE OF ACTION ON BEHALF OF DANIEL SIMMS ESTATE AS SHE IS NOT THE ADMINISTRATRIX

Litigation that is brought in federal court by a party who is not the real party in interest must be dismissed. In this case, the Plaintiff has no standing to sue on behalf of the Estate, as she admittedly is not the Administratrix she claims to be. Plaintiff's counsel advised the Defendant to this fact in November of 2012 and supplied the Delaware County Registrar of Wills document that evidences Sadie Sims as the executor of the Estate. (SUMF25). When advised that the Defendants' position was that under the circumstances Court permission would be necessary to effectuate a change in the name of the Plaintiff, Plaintiff did not seek to Amend. (SUMF26). Indeed, the issue was discussed with the Court at the Rule 16 conference, and the Court Ordered that any Amendment to the Complaint would need to be filed by March 4, 2013. Plaintiff did not seek to Amend within that time period and her case should be dismissed.

It is clear that the real party in interest principle requires that "Every action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). This principle is a means to identify the person who possesses the right sought to be enforced. In addition to requiring all actions to be prosecuted in the name of the real party in interest, Rule 17(a) provides: No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest. FED. R. CIV. P. 17(a). While a literal interpretation of this portion of Rule 17(a) would make it applicable to every case in which an

4

inappropriate Plaintiff was named, the Advisory Committee's Notes make it clear that this provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."1 FED. R. CIV. P. 17 Advisory Committee Notes, 1966 Amendment; see also Nelson v. County of Allegheny, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995). When determination of the correct party to bring the action is not difficult and when no excusable mistake was made, the last sentence of Rule 17(a) is inapplicable and the action should be dismissed. 6A Charles Alan Wright et al., Federal Practice and Procedure § 1555 (1990) ("Wright & Miller"): Whitcomb v. Ford Motor Co., 79 F.R.D. 244, 245 (M.D. Pa. 1978) (noting that Rule 17 contemplates dismissal of an action not prosecuted by the real party in interest). Here the Court afforded Plaintiff sufficient time to seek Court permission to amend the Complaint or file an Amended Complaint in the name of the real party in interest. Having failed to do so, the action should be dismissed.

**B.   OFFICER WILLIAM CAREY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE HE DID NOT VIOLATE MR. SIMMS CONSTITUTIONAL RIGHTS.**

Government officials performing discretionary functions generally are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "seeks to ensure that Defendants reasonably can anticipate when their conduct may give rise to liability by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." United States v. Lanier, 520 U.S. 259, 270-271 (1997) (internal quotations and citations omitted). Qualified immunity "protects 'all but the

plainly incompetent or those who knowingly violate the law.'" Anderson v. Creighton, 483 U.S. 635, 638 (1987) [quoting Malley v. Briggs, 475 U.S. 335, 341 (1986) (emphasis added)].

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court of the United States discussed a two-step inquiry that should be used to determine whether police officers can be held liable for an alleged violation of a Plaintiff's constitutional rights. Id. at 201. The first step is to ask: "Taken in a light most favorable to the party asserting injury, do the facts alleged show the officers' conduct violated a constitutional right?" Id. If no constitutional right would have been violated, then there is no need for further inquiries about qualified immunity, and summary judgment in favor of the officer is appropriate. Id. However, ". . . if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Id. (emphasis added). "The inquiries for qualified immunity and excessive force remain distinct, even after Graham." Id. at 204 (emphasis added). Therefore, in this latter inquiry, the Court should consider whether the unlawfulness of the officer's action would have been apparent to an objectively reasonable police officer confronted by the same circumstances. See generally, id. at 203-209 (discussion on why not distinguishing these inquiries is inconsistent with Graham v. Connor and other decisional law concerning qualified immunity and the use of force); see also, Showers v. Spangler, 182 F.3d 165, 171-172 (3d Cir. 2000) ("objective legal reasonableness" prong of qualified immunity analysis discussed).

The Supreme Court recently modified the analysis in Saucier v. Katz in Pearson v. Callahan, 129 S.Ct. 808, 818 (U.S. 2009). In Pearson, a unanimous Supreme Court concluded:

...that, while the sequence set forth [in <u>Saucier</u>] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

<u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (U.S. 2009). Following <u>Pearson</u>, the two-prong sequence set forth in <u>Saucier</u> is appropriate in this case. Most recently, in <u>Reichle v. Simmss</u>, 132 S.Ct. 2088 (2012), the Supreme Court cited to <u>Ashcroft v. al-Kidd</u>, 563 U.S. __, __, pg. 5-6 stating that "To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.' " <u>Ashcroft v. al-Kidd,</u> 563 U. S. __, __. Pp. 5–6. And, it is well settled that if Officers of reasonable competence could disagree regarding the legality of the conduct, then the objective test is met and immunity should be recognized. <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

1. **There is insufficient evidence for a jury to determine whether PO Carey violated Mr. Simms constitutionally protected right to be free from the use of excessive force.**

The only right that is implicated in this case is whether PO Carey deprived Mr. Simms of his right to be free from the use of excessive force, which is the explicit source of the Plaintiff's § 1983 claims against PO Carey and the City of Chester. <u>Albright v. Oliver</u>, 510 U.S. 266, 272-273 (1994), citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.6 (1989). The Plaintiff has not developed sufficient evidence for a reasonable jury to decide whether PO Carey violated Mr. Simms's right to be free from the use of excessive force.

The undisputed evidence shows that PO Carey was justified in using deadly force when Mr. Simms pointed a firearm at him causing Officer Carey to justifiably fear for his life and to shoot him in self-defense.   This shooting was thoroughly investigated by the Office of the District Attorney of Delaware County who found the shooting justifiable and Plaintiff has provided no evidence to challenge that decision or Officer Carey's version of the events that led to the police shooting.

The Fourth Amendment provides, in pertinent part, "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures . . . ." Use of deadly force by a law enforcement officer is considered a "seizure" under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). In this case, the issue is whether PO Carey's use of deadly force violated Mr. Simms's constitutional right to be free from unreasonable seizure (i.e., excessive force).

The Plaintiff has produced no evidence that contradicts PO Carey's statements concerning the events of August 5, 2011. Without such evidence, no reasonable trier of fact could conclude that PO Carey violated Mr. Simms constitutional right to be free from excessive force. When he pointed the gun at PO Carey, Mr. Simms legitimately placed PO Carey in fear for his life. Following Graham v. Connor, in this rapidly evolving and tense situation, it was reasonable for PO Carey to shoot Mr. Simms. Consequently, as there is no violation of a constitutional right under the record of this case and summary judgment should be granted in favor of PO Carey, and consequently the City of Chester on the Plaintiff's federal claims. If the Court determines there is no underlying constitutional violation by PO Carey, or that PO Carey's conduct was objectively reasonable, it follows that the City of Chester cannot be liable. See, City of Los Angeles v. Heller, 475 U.S. 796,  798-99 (1986); Kneipp v. Tedder, 95 F.3d 1199, 1212

8

n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid);

Mark v. Borough of Hatboro, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless the Plaintiff

establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the

city's policies caused an injury), cert. denied, 516 U.S. 858 (1995).

**2.    Even if this Court were to determine a reasonable jury could find PO Carey's conduct violated Mr. Simms' constitutional right, his use of deadly force was objectively reasonable under the circumstances confronted by him on August 5, 2011.**

If the Court were to determine that a jury could find PO Carey's conduct violated a

constitutional right, PO Carey would nonetheless be entitled to qualified immunity. As stated in

detail above, the undisputed evidence establishes that PO Carey's use of deadly force was

objectively reasonable and justified. Graham v Connor, 490 U.S. 386 (1989).

The facts that the Court considers includes "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officer or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Reasonableness

is to be evaluated from the "perspective of a reasonable officer on the scene, **rather than with

the 20/20 vision of hindsight."** Id. (emphasis added). "The calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount

of force that is necessary in a particular situation." Id. The test is one of "objective

reasonableness." Id. The test is "whether the officer['s] actions are 'objectively reasonable' in

light of the facts and circumstances confronting [him], without regard to [his] underlying intent

or motivation[]." Id.

Qualified immunity protects police officers from the "sometimes 'hazy border between

excessive and acceptable force.'" Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir.

9

2004) (internal citation omitted). This is so even where the police officer's belief, although mistaken, is reasonable under the circumstances. See id., quoting Saucier, supra at 205. wherein the Supreme Court concluded: "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. . . . It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. **If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.**" (Emphasis added.)

The Third Circuit has upheld qualified immunity even in cases where the action in question violates the Constitution, "[w]here there is 'at least some significant authority' that lends support of the police action." Id. at 243 (internal citations omitted). Thus, the proper question is "whether, in the circumstances [confronted by PO Carey, it would have been clear to a reasonable officer that [Carey's] conduct was unlawful in the situation [he] confronted. If it would not have been clear, then qualified immunity is appropriate." Id.

As discussed above, PO Carey is entitled to qualified immunity for his actions. The question **is not** whether his use of force violated clearly established law in a generalized sense; rather, the question is: **Would an objectively reasonable officer, under the same circumstances confronted by PO Carey, have known that his actions would violate clearly established law?** Here, no objectively reasonable officer would have known that discharging his weapon at a person pointing a gun at the officer would be considered an excessive use of force and

therefore violate clearly established law. Consequently, PO Carey's use of deadly force was objectively reasonable and he is entitled to qualified immunity.

### C. PLAINTIFF CANNOT PROVE THE CITY IS LIABLE BASED ON MONELL AND ITS PROGENY.

When determining whether or not a municipality is liable in a § 1983 action, Courts must decide if the underlying constitutional claim is valid. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 798-99 (1986); Kneipp v. Tedder, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid); Mark v. Borough of Hatboro, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless Plaintiff establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the city's policies caused an injury), cert. denied, 516 U.S. 858 (1995). The City's position is that there has been no violation; hence, no municipal liability. Nevertheless, if this court were to find that a reasonable jury could find PO Carey had violated Mr. Simms constitutional right, and that PO Carey is not entitled to qualified immunity, the Plaintiff still cannot prevail on her claim against the City.

To prevail against a municipality under § 1983, a Plaintiff must demonstrate that the municipality itself, through the implementation of municipal policy or custom, caused the underlying constitutional violation. Monell v. Dept. of Social Svcs., 436 U.S. 658 (1978). The Plaintiff must satisfy the stringent standards established by the Supreme Court in Monell and its progeny. The Supreme Court held in Monell that a municipality will not be held liable on the basis of *respondeat superior*; it will only be held liable where there is evidence establishing that the alleged constitutional violation was the result of a municipal policy, custom or practice. Monell, supra, 436 U.S. at 691-95.

The burden of proof under Monell has been approached in two different ways: By reliance on an official policy, or by adducing evidence of a municipal custom. "Policy is made

when a 'decision maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990), quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. Andrews, supra, 895 F.2d at 1480; see also Fletcher v. O'Donnell, 867 F.2d 791, 793-794 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence"), cert. denied, 492 U.S. 919 (1989). Monell liability must be founded upon **evidence** that the government unit itself supported a violation of constitutional rights. Bielevicz v. Dubinon, 915 F.2d 845, 849-850 (3d Cir. 1990) (citing Monell) (emphasis added).

Thus, municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. Before municipal liability will be imposed, the Plaintiff must prove that the municipality's alleged unconstitutional practices are **"so widespread as to have the force of law."** Bd. of Commrs. of Bryan Co. v. Brown, 520 U.S. 397, 404 (1997); accord, Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews, supra, 895 F.2d at 1480 (emphasis added). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur, supra, 475 U.S. at 479 (emphasis in original). "[T]o be sure, 'official policy' often refers to formal rules or understandings – often but not always committed to writing -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Id. at 480-81.

Moreover, the Plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). Here, the Plaintiff bears the burden of proving that the municipal policy or widespread custom or practice was the "moving force" behind the death. Bryan Co., 520 U.S. at 407-08. That is, she must prove that it is more likely than not that the alleged unconstitutional policy, or longstanding unconstitutional custom or practice, caused Mr. Simms death. See Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989) (must prove decision of final policymaker caused the deprivation of rights by policies or by acquiescence in a longstanding custom or practice that constitutes a standard operating procedure of the local governmental entity) (internal quotations and citations omitted).

### 1.   The Plaintiff has not adduced any evidence of the City's failure to train police officers in the use of deadly force.

The Plaintiff claims the City of Chester's  training of its police officers is deficient. Her failure to train claim is legally flawed. In City of Canton, supra, the Supreme Court discussed a municipality's potential liability under § 1983 for an alleged failure to properly train its employees. The Court explained that there are "limited circumstances" in which an allegation of a municipality's failure to train can be the basis of a § 1983 claim against the municipality. Id. at 387. "[T]he inadequacy of [employee] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact." Id. at 388. The Court explained that a municipality may be liable under § 1983 for the failure to train "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a policy as defined by our prior cases." Id. at 389. The focus in this determination is on the adequacy of the training program in relation to the tasks the particular employees must perform and the connection between the identified deficiency in the

municipality's training program and the ultimate injury. Id. at 390-91. To succeed on a § 1983 claim, the party must prove that the training deficiency actually caused the injury. Id. at 391.

The Canton Court further explained that it is not enough to show that the municipality is responsible for the training program in question, id., and it is not enough to establish that a particular employee has been unsatisfactorily trained, for the employee's shortcomings may be the result of factors other than a faulty training program. Id. at 390. It is not enough to prove that an incident would not have happened if an employee had "better" or "more" training, because even the best-trained employees will occasionally make mistakes. Id. at 391. As the Canton Court recognized, "in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 Plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Id. at 392. The Canton Court thus concluded that a municipality's alleged failure to train will give rise to liability only where the failure to train "reflects deliberate indifference to the constitutional rights of its inhabitants." Id. A failure to train police officers "can only form the basis for section 1983 municipal liability if the Plaintiff can show both contemporaneous knowledge of the offending incident or a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.'" Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

Of particular note here, the Plaintiff here has not adduced even a scintilla of evidence **that** a final policymaker of the City of Chester knew that police officers needed "better" or "more" training in the use of deadly force while on duty, but consciously decided to forego such additional training. She has neither identified the specific training the City of Chester should have offered that would have prevented the deprivation of Mr. Simms constitutional rights, nor

14

has she established that such training was not provided. As pointed out in the Statement of Undisputed Facts, the evidence shows the City of Chester trains police recruits on how to use deadly force, mandated by Pennsylvania's Municipal Police Officers' Education and Training Commission ("MPOETC"). See 37 PA. CODE § 203.51 (application of force and firearms training are two of several mandated courses that must be included in the Police Academy's basic police recruit training curriculum).   The City of Chester also trains its police officers through continuing education on how and when to use deadly force. See 37 PA. CODE § 203.52 (mandatory annual in-service training of all municipal police officers).  In this case, the only use of force case cited by the Plaintiffs in their Amended Complaint that involved a use of force by Officer Carey was the case of Barber v. Sheppleman, et al.  However, in that case, Officer Carey was actually a Marcus Hook Police Officer at the time, and following a jury trial of that case, the verdict was returned fully in favor of Officer Carey. (Barber v. Sheppleman et al at 2:10-cv-03620, at docket #87, 88).  Therefore, this claim must fail.

   **2.     There is no evidence of an unconstitutional policy or widespread custom or practice of Philadelphia police officers using deadly force in violation of citizens' constitutional rights.**

   Moreover, there is no proof before this Court that the City of Chester's existing policies or customs threaten citizens' constitutional rights. There is no evidence that the City, through its supervisory hierarchy, had knowledge of or acquiesced in a widespread custom of police officers using deadly force in violation of citizens' constitutional rights.

   Based on the foregoing, the Plaintiff is unable to satisfy any of the necessary elements to prove municipal liability based on this theory of liability. Therefore, the Court should grant summary judgment in favor of the City on this claim.

### 3. The Plaintiff has not adduced evidence of deliberate indifference on the part of a policymaker.

Whether the Plaintiff proceeds under a theory that an official policy or a widespread custom or practice caused the violation, her burden of proof is the same: She must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. Andrews, supra, 895 F.2d at 1480. To identify who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." Id. at 1481. Under § 1983, only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

The requirement of producing scienter-like evidence on the part of an official with policymaking authority is consistent with the conclusion that "'absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom for failure to train.'" Beswick v. City of Philadelphia, 185 F. Supp. 2d 418, 427 (E.D. Pa., 2001), quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1063 (3d Cir. 1991).

Municipal liability under § 1983 potentially attaches only where the policymaker makes a deliberate choice to follow a course of action from among various alternatives. Pembaur, supra, 475 U.S. at 483; Bryan Co., supra, 520 U.S. at 404 ("Plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged") (emphasis in original).

In this case, there is none of the "scienter-type evidence" that is required to hold the City of Chester liable for failing to train, supervise or discipline its police officers. Simmons, supra, 947 F.2d at 1063. Clearly, there is no evidence that the City of Chester's existing supervision,

disciplinary system or training programs would **obviously** lead to constitutional violations. Indeed, even if a jury could find PO Carey had violated Mr. Simms's civil rights, the Plaintiff cannot show that PO Carey did so while executing an officially adopted policy declared by City officials, or that he was acting pursuant to an officially adopted custom.

For the foregoing reasons, the Plaintiff's claims that the City of Chester fails to train, supervise or discipline its police officers fail as a matter of law and should be dismissed with prejudice.

### 4. The Plaintiff cannot establish that a City policy or widespread custom or practice <u>directly caused a</u> violation of the Plaintiff's decedent's constitutional rights.

It is the Plaintiff's burden to prove that a municipal policy was the "moving force" behind the death at issue. <u>Bryan Co.</u>, <u>supra</u>, 520 U.S. at 407-08. This means Plaintiff must prove that it is more likely than not that the alleged unconstitutional policy, custom, or practice directly caused or led to the death. Indeed, Plaintiff has developed no competent evidence whatsoever that the City of Chester's supervision, discipline or training of its police officers is constitutionally deficient.. Here, the Plaintiff is unable to satisfy this critical element of municipal liability. Even if the Plaintiff could show deliberate indifference on the part of the City of Chester in failing to train, supervise or discipline its police officers, he would also have to prove that the City's inadequate training, supervision or discipline was the moving force behind PO Carey's use of deadly force on August 5, 2011 . See, <u>Grazier v. City of Philadelphia</u>, 328 F.3d 120, 124-125 (the City's decisions **must be** the moving force behind an actual constitutional violation, citing <u>Canton</u>, <u>supra</u>, at 389; that the City's inadequate training policies on the use of force were the moving force behind the Plaintiff's injuries, again citing <u>Canton</u> <u>supra</u>

17

In this case, the Plaintiff has developed no evidence whatsoever that could lead a jury to find that Mr. Simms's death was directly caused by any unconstitutional policy, or by a widespread unconstitutional custom or practice, of the City. Without the requisite evidence of causation, all claims against the City based upon municipal liability must fail as a matter of law and, therefore, should be dismissed with prejudice.

**D.    COUNTS V AND VI AGAINST OFFICER CAREY MUST BE DISMISSED AS THEY ARE NOT CAUSES OF ACTION  BUT VEHICLES THROUGH WHICH CLAIMS MAY BE BROUGHT IN  FEDERAL COURT**

Plaintiff in Count V raises a claim for wrongful death, and in Count VI a survival action against Officer Carey.  Under  42 Pa. Cons.Stat. Ann. § 8301(a) ("An action may be brought ... to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery"); 42 Pa. Cons.Stat. Ann. § 8302 ("All causes of action or proceedings, real or personal, shall survive the death of the Plaintiff or of the Defendant, or the death of one or more joint Plaintiffs or Defendants.").However, wrongful death and survival act claims are not substantive causes of action but are rather statutory schemes that delineate damages available due to causes of action that exist outside of the statutory scheme. See Labar v. Alercia, 2011 WL 710478 (E.D. Pa. 2011); Sullivan v. Warminster Township, 2010 WL 2164520 (E.D.Pa. 2010); Morais v. City of Philadelphia, 2007 WL 853811, 13 (E.D.Pa. 2007.)

**E.    THE PLAINTIFF'S STATE LAW CLAIMS IN COUNT IV AND VIII ARE BARRED BY THE TORT CLAIMS ACT.**

The Plaintiff's state law claims for assault and battery and conspiracy against Officer William Carey are barred by the Tort Claims Act. Out of respect for judicial economy,

convenience and fairness to the parties, PO Carey respectfully requests This Honorable Court to exercise supplemental jurisdiction over the Plaintiff's state law claims and dismiss them with prejudice. See Bright v. Westmoreland County, 443 F.3d 276, 286 (3d Cir. 2006) (the trial court has discretion to exercise supplemental jurisdiction over pendant state claims out of respect for judicial economy, convenience and fairness to the parties). The tort liability of the City of Philadelphia ("the City") is governed and limited by the Political Subdivision Tort Claims Act ("the Act"), 42 PA. CONS. STAT. ANN. §§ 8541-8564. The Act provides municipalities with general immunity from tort liability, as follows:

> Except as otherwise provided in this subchapter, no local agency
> shall be liable for any damages on account of any injury to a
> person or property caused by any act of the local agency or an
> employee thereof or any other person.

42 PA. CONS. STAT. ANN. § 8541. A municipal employee may only be liable "to the same extent as [her] employing local agency and subject to the limitations imposed by this subchapter." 42 Pa.C.S. § 8545. However, a City employee is not immune from a claim of personal injury if her actions causing the injury constitute a crime, actual fraud, actual malice or willful misconduct. ID. at § 8550 (willful misconduct). Willful misconduct is the intention to do what is **known** to be wrong, as in using excessive force to make an arrest **knowing** that the force used is excessive. See In re City of Philadelphia Litigation, 938 F. Supp.1264, 1271 (E.D. Pa. 1996) (district court analyzed Pennsylvania's Tort Claims Act and Pennsylvania decisional law regarding "willful misconduct" in context of use of force) (emphasis added). **"[T]he existence of willful misconduct is a question of law that 'must be judicially determined.'"** Kuzel v.

19

Krause, 658 A.2d 856, 860 (Pa. Commwlth. Ct. 1995) quoting 42 PA. CONS. STAT. ANN. §
8550 (emphasis added).

The Tort Claims Act provides for a limited waiver of the PO Carey's general immunity.
See 42 PA. CONS. STAT. ANN. § 8542. The eight exceptions of this general immunity must be
narrowly interpreted, given the expressed legislative intent to insulate local governments or
political subdivisions from tort liability. Lockwood v. City of Pittsburgh, 751 A.2d 1136 (Pa.
2000); Snyder v. Harmon, 562 A.2d 307 (Pa. 1989); Love v. City of Philadelphia, 543 A.2d 531
(Pa. 1988); Mascaro v. Youth Study Center, 523 A.2d 1118 (Pa. 1987). None of the Plaintiff's
intentional tort claims fit into any of the eight exceptions to immunity. Moreover, there is
insufficient evidence for a reasonable jury to determine that PO Carey knew her use of deadly
force was unlawful. Thus, her immunity is not waived under 42 PA. CONS. STAT. ANN. §
8550.

**F.   THE PLAINTIFF'S STATE LAW CLAIMS IN COUNT VII AGAINST THE
CITY FOR NEGLIGENCE IN SCREENING, HIRING, TRAINING,
SUPERVISING, DISCIPLINING AND/OR RETAINING BARRED BY THE
TORT CLAIMS ACT.**

Finally, Plaintiff's state tort claims against the City in Count VII for negligent hiring,
retention and supervision of police officers are barred by governmental immunity pursuant to the
Pennsylvania Political Subdivision Tort Claims Act (the "Act"), 42 Pa.C.S. § 8541, et seq. The
Act provides that "no local agency shall be liable for any damages on account of any injury to a
person or property caused by any act of the local agency or an employee thereof or any other
person." 42 PA. CONS. STAT. § 8541. Notwithstanding the immunity the Act provides,
liability may be imposed on a municipality or its employees where (1) damages would be
recoverable at common law or under a statute creating a cause of action if the injury were caused

by a person not protected by immunity, and (2) the claim falls within one of the statutory exceptions to governmental immunity in Section 8542(b) of the Act. Granchi v. Borough of N. Braddock, 810 A.2d 747, 749 (Pa Commw. 2002). These exceptions pertain to: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. See 42 PA. CONS. STAT. § 8542(b).The above eight exceptions do not apply in this case.

Plaintiff's' negligence claim does not fall within one of these eight narrow exceptions to the City's immunity from negligence suits, so this claim also fails as a matter of law. See Thomas v. Cianfrani, 2009 WL 1704471, at *4-5 (concluding that Tort Claims Act affords immunity to City of Philadelphia against claims of negligent hiring, retention, and supervision of police officers). Finally, the Tort Claims Act similarly bars Plaintiffs' wrongful death and survival claims against the City. See Bornstad ex rel. estate of Bornstad v. Honey Brook Twp., No. 03-CV-3822, 2005 WL 2212359, at *21-22 (E.D. Pa. Sept. 9, 2005) (opining that "wrongful 9 death and survival actions sound in tort and are governed by the Tort Claims Act."); Heckensweiler v. McLaughlin, 517 F. Supp. 2d at 718-19 (dismissing wrongful death and survival actions against Springfield Township on Tort Claims Act grounds).

## V.     CONCLUSION

For all the foregoing reasons, summary judgment should be granted in favor of the Defendants City of Chester and Officer William Carey, and all the Plaintiffs claims against them should be dismissed with prejudice.

Respectfully submitted,

**Holsten & Associates**

SMM2371

April 3, 2013

**Dated:** _____      BY: _____

**Suzanne McDonough, Esquire**

Attorney I.D. No.: 29394

Holsten & Associates

One Olive Street

Media, PA 19063

(610) 627-8307

Attorney for Defendants

22