IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHNEISHA DUNCAN, Administratrix | : | |
| Estate of Daniel Simms | : | Civil Action No. 12-CV-02117 |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| CITY OF CHESTER | : | |
| and | : | |
| WILLIAM CAREY | : | |
| and | : | |
| JOHN DOE | : | |
| Defendants | : | |

**DEFENDANTS' CITY OF CHESTER AND OFFICER WILLIAM CAREY'S
STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Defendants, City of Chester and Police Officer William Carey, by and through their undersigned counsel, Holsten & Associates, by Suzanne McDonough, hereby submit this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1.      On August 4, 2011, Police Officer William Carey of the City of Chester Police Department received a call from a credible informant that Daniel Simms had robbed a friend of the informant at gunpoint.  Carey was told by the informant that he confronted Simms about it, but Simms threatened his life and pointed a gun at him telling him to mind his own business. (CID Investigation, Statement of Officer William Carey attached hereto as Exhibit "A", bates stamped 00033-00041, at 00034).

2.      Officer Carey advised Pennsylvania State Police Trooper John Cargan of the informant's report as Carey works with the State Police of the Police Rigger Lock program that searches for weapons.  He also advised City of Chester Detective Todd Nuttall and was informed to keep an eye out for him and stop him if the chance arises. (Exh. "A" at  #00034).

3.      The State Police contingent looked for Simms the night of the 4th of August but did not find him.  However, on August 5, 2011, Officer Carey was patrolling an area of frequent crime with Officer Brian Pott on the 7:30 p.m. to 7:30 a.m. shift, and when they turned East onto 23rd Street Carey noticed Daniel Simms and another man on that block and informed Pott that he wanted to stop Simms because of the reports that he had a firearm. (Exh. "A" at 00035-00036)

4.      Carey and Potts exited the vehicle and Carey asked the Simms and his companion to come over to them but when Simms made eye contract with Carey, he fled on foot.  (Exh. "A" at 00037.)

5.      Simms ran between houses while holding an area at his left pocket, and Carey observed him tug at and then reach into his left pocket, ultimately retrieving a black firearm. (Exh. "A" at 00038.)

6.      Simms raised the weapon at Carey and Carey, now in fear for his life, drew his service weapon in response.  While chasing Simms, Carey warned him once, if not twice, to drop it – i.e. the weapon. (Exh. "A" at 00040.)

7.      Simms, however, continued to run toward a fence, hit the fence then spun around and pointed the gun at Officer Carey who, while losing his footing, was able to discharge his weapon once. (Exh. "A" at 00038-00039.)

8.      After Carey's service revolver discharged, Simms body swung the opposite way and Carey saw Simms throw his gun over the fence. (Exh. "A" at  #00040.)

9.      Simms then stood there looking at Carey cursing him as Carey told him to get on the ground. While Carey considered whether to take him to the ground himself or await back up, Simms collapsed onto the ground. (Exh. "A" at 00040.)

10.    Carey approached him and then realized that Simms was having difficulty breathing and appeared to be going into shock.  Carey checked Simms airway and at some point it appeared that Simms stopped breathing so Carey initiated CPR, which he maintained until relieved by another Officer.  (Exh. "A" at 00040-00041.)

11.    Carey informed the arriving Officers that Simms had tossed his weapon over the fence. ( Exh. "A" at 00041.)

12.    Officer Carey reported the incident to radio dispatch and requested Medics to his location.  (Exh. "B," City of Chester Police Report, Incident 2011-32999, pages 1 through 8 attached hereto).

13.    Officer Steven Byrne, City of Chester Police, was the first to arrive and observed Officer Carey providing CPR and Byrne assumed this duty for him.  (Exh. "B" at pages 2-3).

14.    The weapon that Officer Carey informed Byrne Simms threw over the fence was located and secured by Chester Police Officer Hector Villanueva. (Exh. "B" at 3, 8 with Property receipt)

15.    The weapon Simms possessed was a loaded Ruger, 380 Automatic with live rounds and was placed into evidence.  (Exhibit "B", Property Record)

16.    Detective Todd Nuttall arrived on scene and advised CID of the Officer involved shooting, and once CID, (Criminal Investigation Division, Delaware County District Attorneys Office, personnel arrived on the scene, they were briefed and then took control of the investigation. (Exh. "B" at 3.)

17.    Police reports indicate that Simms, age 21, was pronounced dead at 8:10 p.m. on August 5, 2011 at Chester Crozer Medical Center.  (Exh. "B" at 4).  The Delaware County Medical Examiner determined that the decedent died of a single gunshot wound and that Simms

blood tests were positive for oxycodone. (Exhibit "C" Medical Examiner report Case 2011-0783 attached hereto, 00094 through 00100, at 00098.)

18.     The weapon in Simms possession was a fully loaded blue steel Ruger LCP pistol was equipped with a laser sight system and had been reported stolen to the State Police on July 26, 2011. (Exhibit "D," CID Incident Investigation Report 20110806M4654 attached hereto pages 1 to 32 at 00018, 00023).

19.     The District Attorney CID investigation concluded after reviewing all the evidence and interviewing witnesses, as they do in all police shooting cases, that the Officer involved shooting by Officer William Carey was justifiable. (Exh. "E," Deposition of Detective Thomas Worrilow, CID, attached hereto in its entirety and at 3:16-25;4:1-9).

20.     The forensic examination of the weapon that was recovered by police testified positive for the presence of Simms DNA. (Exh. "E," 13:23-25; 14:1-3; Exh. "F" Lab report at 000101-00107).

21.     The City of Chester Police Officers are trained on the use of deadly force as mandated by Pennsylvania's Municipal Police Officers' Education and Training Commission ("MPOETC"). See 37 PA. CODE § 203.51 (application of force and firearms training are two of several mandated courses that must be included in the Police Academy's basic police recruit training curriculum).

22.     The City of Chester also provides continuing education for its police officers on how and when to use deadly force. See 37 PA. CODE § 203.52 (mandatory annual in-service training of all municipal police officers).

23.     The lawsuit against the City of Chester, William Carey and a John Doe Defendant was filed by an individual Rahneisha Duncan who claimed to be the Administratrix of the Estate of Daniel Simms initially on April 17, 2012 (Docket #1) and an Amended Complaint was filed on thereafter by the same individual as Administratrix at docket #15). (Amended Complaint attached hereto as Exhibit "G")

24.     The City of Chester and Officer William Carey filed a response to the operative pleading raising affirmative defenses including that of qualified immunity on September 17, 2012. (Answer with Affirmative Defenses attached hereto as Exhibit "H.")

25.     Thereafter, counsel for Plaintiff advised the Defendants that the individual who filed the lawsuit was not the Administratrix of the Estate of Simms and on November 7, 2012 produced the Delaware County Registrar of Wills documentation that the actual executor was Sadie Sims and requested a stipulation from the City Defendants to substitute which request, under the circumstances, the City attorney could not agree upon as a stipulation believing that a Court request to Amend was necessary.. (E-mail from Plaintiff's counsel dated November 7, 2012, response dated the same day and documentation from the Register of Wills that Sadie F. Simms is the actual executor for the estate is attached collectively as Exhibit "I")

26.     The Court held a Rule 16 conference thereafter on January 4, 2013 and the improper party Plaintiff was disclosed to the Court who thereafter entered an Order that same date that any Motion to Amend the complaint, join or add additional Defendants or name John Doe's must be filed by March 4, 2013, 60 days after the Court Order.  The Case Management Order further held that disclosure of all Plaintiff's expert testimony was required by March 23, 2013. (Exh. "J", Case Management Order attached hereto)

27.     Substantive discovery propounded by Defendants upon the Plaintiff have not been responded to by Plaintiff given that the Plaintiff has no standing to be a Plaintiff in the instant action.  Plaintiff has taken no discovery in this case. (Exh. "K" consisting of transmittal letter dated August 24, 2012 enclosing Interrogatories, Expert Interrogatories and Request for Production of Documents attached hereto.

28.     To establish any potential liability in this case, Plaintiff must produce expert testimony, and since the expert testimony deadline has expired without the production of any such evidence, this Motion is ripe for disposition.

Respectfully submitted,
**Holsten & Associates**
SMM2371

Dated: _____     BY: _____

April 3, 2013

**Suzanne McDonough, Esquire**
Attorney I.D. No.: 29394
Holsten & Associates
One Olive Street
Media, PA 19063
(610) 627-8307
Attorney for Defendants